Filed 11/23/22 In re J.S. CA2/4

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| In re J.S. et al.,<br><br>Persons Coming Under Juvenile Court Law.<br>_____<br><br>LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>    Plaintiff and Respondent<br><br>    v.<br><br>V.S.,<br><br>    Defendant and Appellant. | B316342<br>   [consolidated with B318128]<br><br>(Los Angeles County<br> Super. Ct. No. 20CCJP01114A-D) |

APPEAL from orders of the Superior Court of Los Angeles County, Kristen Byrdsong, Presiding Commissioner. Affirmed.

Megan Turkat Schirn, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, Acting County Counsel, Kim Nemoy, Assistant County Counsel, and Kelly G. Emling, Deputy County Counsel, for Plaintiff and Respondent.

_____

V.S. (mother) appeals from the juvenile court's October 28, 2021 and January 24, 2022 orders denying two Welfare and Institutions Code[1] section 388 petitions filed by mother after the juvenile court terminated family reunification services and ordered the matter set for a section 366.26 hearing. Mother's sole contention on appeal is that the juvenile court and the Los Angeles County Department of Children and Family Services ("DCFS" or "The Department") failed in their duties of inquiry under the Indian Child Welfare Act (ICWA) (25 U.S.C. § 1901 et seq.) and related California statutes (§ 224 et seq.) by failing to interview mother's extended family as to possible Indian ancestry. We agree DCFS failed to complete the initial inquiry required under ICWA, but find the error was harmless and therefore affirm.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

Mother's appeal is from dependency proceedings initiated by DCFS in 2020 due to concerns of medical neglect and physical abuse. This appeal concerns only the minors Jose S. (born Jan. 2006), Tony M. (born July 2007), Frankie M. (born Sept. 2009), and Alberto M. (born Jan. 2012). Jurisdiction for Theseus M. (born Dec. 2013) was terminated with a family law order granting his father custody.

---

[1]     All statutory references are to the Welfare and Institutions Code unless otherwise stated.

[2]     Our summary of the facts is limited to those needed for resolution of the issues raised on appeal and to provide relevant context.

On February 25, 2020, DCFS filed a section 300 dependency petition on behalf of the children, and on June 23, 2020, the petition was sustained as to all counts. Appended to the dependency petition was the Indian child inquiry attachment (ICWA-010 form), which reflected that when questioned by DCFS on February 5, 2020, mother indicated that the children had no known Indian ancestry. In the detention report, DCFS noted that mother stated on February 5, 2020 that the children did not have any Indian ancestry.

On February 26, 2020, mother filed a parental notification of Indian status (ICWA-020 form), reporting "no Indian ancestry as far as I know." At the detention hearing, held on the same day, the court stated that mother completed an ICWA-020 Parental Notification of Indian Status form, indicating she had no Indian ancestry. Mother, however, informed the court that Jose M. (father of Jose, Tony, Frankie, and Alberto) has Apache heritage, and DCFS was ordered to investigate the claim and to interview the paternal grandfather of Jose.

On April 9, 2020, the social worker mailed Father Jose M. an ICWA-020 form.[3] In the Jurisdiction/Disposition Report dated April 22, 2020, the social worker indicated that mother reported father had Apache ancestry through his maternal grandmother, Dolores M., and not through his paternal grandmother, Sofia M. On May 15, 2020, the social worker spoke to paternal great-grandmother Dolores M., who stated that her sister told her of possible Native American heritage, but that her siblings were all deceased and she had no additional information.

---

[3] According to the jurisdiction report, father was incarcerated at Wasco State Prison.

DCFS assessed maternal grandmother for placement of the children. Although DCFS had contact with her, the record includes no indication that she was asked about possible Native American ancestry in mother's family.

At the June 23, 2020 adjudication hearing, the juvenile court ordered DCFS to further interview father Jose M. and relatives regarding American Indian ancestry and to notice any applicable tribes, including all Apache tribes, and the Bureau of Indian Affairs (BIA). The social worker subsequently received a letter from the BIA, providing a list of contact information for all Apache tribes, and sent ICWA-030 forms by certified mail to the tribes with the names, addresses and birthdates of mother, father, maternal grandparents, paternal grandmother, and paternal great-grandmother.[4] At the August 4, 2020 dispositional hearing, the juvenile court found that notice was timely sent pursuant to ICWA.

A "Last Minute Information" for the court dated September 29, 2020, indicated that notices had been sent to eight Apache tribes. The responses indicated that the children were not eligible for membership in the Fort Sill-Chiricahua-warm spring Apache tribe, the Yavapai Apache Nation, the Jicarilla Apache Nation, and the San Carlos Apache Tribe. The Department had not received additional letters from the other tribes. At a progress report hearing on that same day, the juvenile court found that ICWA did not apply and ordered DCFS to attach any outstanding responses received to the next report.

On April 23, 2021, the juvenile court terminated reunification services for both parents and ordered the matter set for a section 366.26 hearing.

---

[4] For the paternal grandfather, only his name was provided.

On August 16, 2021, mother filed a section 388 petition, requesting a home of parent order or reinstatement of reunification services based on her completion of services and sobriety since March 2021.  After a hearing on October 28, 2021, the juvenile court denied mother's section 388 petition.  The court found no changed circumstances and concluded that it would not be in the best interests of the children to grant the section 388 petition.  On October 28, 2021, mother filed a notice of appeal from the order denying her section 388 petition.

On December 13, 2021, mother filed a duplicative 388 petition that was denied on the same grounds.  On January 24, 2022, mother filed a notice of appeal from the denial of her section 388 petition.  The notices of appeal filed by mother on October 28, 2021 (B316342) and January 24, 2022 (B318128) were subsequently merged and consolidated into the instant appeal.

## DISCUSSION

A.    *Applicable Law and Standard of Review*

ICWA[5] reflects "a congressional determination to protect Indian children and to promote the stability and security of Indian tribes and families by establishing minimum federal standards that a state court . . . must follow before removing an Indian child from his or her family."  (*In re Austin J.* (2020) 47 Cal.App.5th 870, 881 (*Austin J.*).)  Both ICWA and the Welfare and Institutions Code define an "Indian child" as "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological

---

[5]    Our state Legislature incorporated ICWA's requirements into California statutory law in 2006.  (*In re Abbigail A.* (2016) 1 Cal.5th 83, 91.)

child of a member of an Indian tribe." (25 U.S.C. § 1903(4); § 224.1, subds. (a) and (b) [incorporating federal definitions].)

The juvenile court and DCFS have "an affirmative and continuing duty to inquire whether a child for whom a petition under Section 300 . . . may be or has been filed, is or may be an Indian child." (§ 224.2, subd. (a); see *In re Isaiah W.* (2016) 1 Cal.5th 1, 9, 11–12.)[6] This continuing duty can be divided into three phases: the initial duty to inquire, the duty of further inquiry, and the duty to provide formal ICWA notice. The phase at issue here is the initial duty to inquire.

The duty to inquire whether a child is an Indian child begins with "the initial contact," i.e., when the referring party reports child abuse or neglect that jumpstarts a DCFS investigation. (§ 224.2, subd. (a).) DCFS's initial duty to inquire includes asking the child, parents, legal guardian, extended family members, and others who have an interest in the child whether the child is, or may be, an Indian child. (*Id.*, subd. (b).) Similarly, the juvenile court must inquire at each parent's first appearance whether he or she "knows or has reason to know that the child is an Indian child." (*Id.*, subd. (c).) The juvenile court must also require each parent to complete Judicial Council form ICWA-020, Parental Notification of Indian Status. (Cal. Rules of Court, rule 5.481(a)(2)(C).) The parties are instructed to inform the court "if they subsequently receive information that provides reason to know the child is an Indian child." (25 C.F.R. § 23.107(a); § 224.2, subd. (c).)

---

[6] Due to the court's continuing duty of inquiry under ICWA, mother may appeal from the denial of the 388 petitions even though the juvenile court did not make any ICWA-related findings when denying the petitions. (See *In re Isaiah W., supra*, 1 Cal.5th at pp. 6, 11 [holding that due to the continuing duty of inquiry, a parent may challenge an ICWA finding from a subsequent order even if the parent did not raise such a challenge from the initial order].)

A duty of further inquiry is imposed when DCFS or the juvenile court has "reason to believe that an Indian child is involved" in the proceedings. (§ 224.2, subd. (e); *Austin J., supra*, 47 Cal.App.5th at pp. 883–884, and *In re D.S.* (2020) 46 Cal.App.5th 1041, 1048–1049 (*D.S.*).) When DCFS or the juvenile court has "reason to know" an Indian child is involved, formal ICWA notice is sent to the relevant tribes. (*D.S., supra,* at p. 1052.)

We review a juvenile court's ICWA findings for substantial evidence. (*In re Josiah T.* (2021) 71 Cal.App.5th 388, 401; *In re S.R.* (2021) 64 Cal.App.5th 303, 312.)

B.    *Analysis*

Mother contends the juvenile court erred in finding ICWA did not apply because the Department did not contact her extended family members to inquire about possible Indian ancestry.[7] We agree the ICWA-related inquiry was inadequate, but deem the error harmless.

Despite Mother's denial of Indian ancestry, DCFS had a duty to ask mother's extended family members about any potential Indian heritage. (*In re Dezi C.* (2022) 79 Cal.App.5th 769, 776 (*Dezi C.*) ["the initial duty of inquiry mandated by California's version of ICWA obligates the Department to question 'extended family members' about a child's possible American Indian heritage"], review granted Sept. 21, 2022, S275578; § 224.2, subd. (b).) The maternal grandmother was readily available to provide information on possible Indian ancestry, but DCFS apparently did not conduct this inquiry with her. "Where, as here, there is no doubt that the Department's inquiry was erroneous, our examination as to whether substantial evidence supports

_____

[7]    Mother does not contend the ICWA inquiry was deficient in any respect as to father's side of the family.

7

the juvenile court's ICWA finding ends up turning on whether that error by the Department was harmless—in other words, we must assess whether it is reasonably probable that the juvenile court would have made the same ICWA finding had the inquiry been done properly. [Citation.] If so, the error is harmless and we should affirm; otherwise, we must send it back for the Department to conduct a more comprehensive inquiry." (*Dezi C.*, *supra,* at p. 777.)

While appellate courts have articulated several different standards for deciding whether DCFS's failure to conduct a proper initial ICWA inquiry is harmless, we follow the rule articulated by our colleagues in Division Two: "[A]n agency's failure to conduct a proper initial inquiry into a dependent child's American Indian heritage is harmless unless the record contains information suggesting a reason to believe that the child may be an 'Indian child' within the meaning of ICWA, such that the absence of further inquiry was prejudicial to the juvenile court's ICWA finding." (*Dezi C.*, *supra*, 79 Cal.App.5th at p. 779.)

In *Dezi C.*, *supra*, the court found the record in that proceeding did not provide a "reason to believe" that the children may be Indian children where "[b]oth mother and father attested—to the Department, on an official form, and to the juvenile court during their initial appearances—that they had no Indian heritage. Mother and father grew up with their biological family members. Mother points to nothing else in the juvenile court's record indicating that she or father has any American Indian heritage. And mother makes no proffer on appeal that either parent has any such heritage." (*Dezi C., supra,* 79 Cal.App.5th at p. 786.)

Here, mother repeatedly denied any Indian ancestry on her side of the family (orally and on the ICWA-020 form). She has not pointed to any

information in the record or made a proffer on appeal to support the possibility that her family has Indian ancestry. Mother suggests she would not necessarily have known if the maternal grandmother had information that their family had Indian heritage because she contends "[t]here was an estrangement between mother and maternal grandmother." However, the record does not support her assertion. Rather, it indicates that maternal grandmother was actively involved in the lives of mother and her children, with mother apparently living with her at certain points even as an adult. Thus, the record does not provide any indication that mother might "unknowingly be [a] member[] of an Indian tribe." (Cf. *In re Ezequiel G.* (2022) 81 Cal.App.5th 984, 1015 [observing that where parents were "in contact" with their extended families, "the possibility that they might unknowingly be members of a tribe appears trivially small"].)

In sum, nothing in the record suggests any reason to believe that mother's knowledge regarding the children's heritage is incorrect or that the children might have Indian ancestry through the maternal line. We therefore conclude that DCFS's error in this case was harmless.

//
//
//
//
//
//
//
//
//

9

## DISPOSITION

The orders on appeal are affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


                                            STONE, J.*

We concur:



COLLINS, Acting P. J.



CURREY, J.

*Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

10